GENERAL TIME CORPORATION,
Plaintiff,

v.

BULK MATERIALS, INC., Bulk Materials Investments, Inc., and Fleet Transport Company, Inc., Defendants.

Civ. No. 92–109–ATH(DF).

United States District Court,
M.D. Georgia,
Athens Division.

June 18, 1993.

Kenneth Lee Millwood, Atlanta, GA, for plaintiff.

Stephen E. O'Day, Clark G. Sullivan, Atlanta, GA, for defendants.

FITZPATRICK, District Judge.

On March 29, 1993, this Court heard oral argument on Defendant Fleet Transport Company, Inc.'s ("Fleet") motion to dismiss [1] under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Plaintiffs have failed to state a claim upon which relief may be granted. A claim should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts entitling it to relief. *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir.1988). For the purposes of a motion to dismiss this Court must accept the allegations in the complaint as true. *Id.*

## BACKGROUND

This lawsuit arises out of Fleet's spill of trichloroethylene ("TCE"), a listed hazardous

---

1. Plaintiff contends that Defendant's motion should be treated as a motion for summary judgment since Fleet attached a Consent Order and a letter to its motion. Nevertheless, since the Court may take judicial notice of the Consent Order, *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir.1987), and Fleet agrees for the Court to decide the motion without reference to the letter, the Court will not convert Fleet's motion to dismiss to a motion for summary judgment.

substance, onto the ground at Plaintiff's facility in Athens, Georgia. On March 4, 1992, Fleet delivered a bulk shipment of TCE to Plaintiff's plant. During the unloading of the TCE, Fleet's hose failed and came partially loose from the Fleet tanker to which it was attached. As a result, 500 gallons of TCE sprayed onto Plaintiff's property. Despite prompt emergency response efforts, the spilled TCE was not fully recovered, and remains a continuing source of contribution to groundwater contamination at the site.

As part of the emergency response effort, Fleet Transport consented to an order by the Georgia Department of Natural Resources, Division of Environmental Protection ("GEPD"), to engage in a clean-up effort at the site, and to pay a fine for the spill. Georgia EPD did not require General Time to become a party to the Consent Order since Fleet spilled the TCE. Contemporaneous with the emergency response, General Time voluntarily contracted for removal of the contaminated soil necessary to meet the emergency requirements set by the Georgia EPD, which required contaminated soil to be removed from the site until background readings 20 ppb of TCE were achieved. In order to meet these goals under the time constraints imposed by the Georgia EPD, General Time hired USPCI to remove over 3,200 tons of contaminated soil, which cost over one million dollars. The soil removal, which was an integral part of the emergency response ordered by the State, would not have been required absent the spill.

Fleet repeatedly refused General Time's subsequent requests to reimburse it for the costs of the soil removal. Consequently, Plaintiff filed this suit asserting claims pursuant to Section 107 and 113 of the Comprehensive Environmental Response Compensa-

tion and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), 42 U.S.C. § 9610 et seq., the Georgia Hazardous Site Response Act ("GHSRA"), O.C.G.A. § 12–8–90 et seq. as well as state common law claims, for actual and consequential damages arising out of the TCE spill. Additionally, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, determining the ultimate relative responsibilities for the past and future costs of investigation and remediation of the environmental contamination.

## DISCUSSION

Defendant Fleet asserts that Plaintiff's claims for contribution are barred pursuant to 42 U.S.C. § 9613(f)(2) and O.C.G.A. § 12–8–96.1(f) and that Plaintiff's state law claims are pre-empted by CERCLA.

### I. 42 U.S.C. § 9613(f)

 CERCLA imposes a scheme of liability whereby certain entities ("potentially responsible parties" or "PRPs") are jointly and severally liable for response costs associated with the clean-up of hazardous materials that have been released into the environment at particular facilities. *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1493 (S.D.Ohio 1991). As originally enacted, CERCLA did not expressly permit a PRP who had incurred response costs to pursue contribution against other PRPs. *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 92 (1st Cir.1990). In 1986, however, Congress added section 113(f) to CERCLA as part of the Superfund Amendments Reauthorization Act ("SARA") to provide for an express right of contribution among PRPs. *See* 42 U.S.C. §§ 9613(f)(1) [2]. Section 113(f)(2) [3], however, bars an action for contri-

---

**2.** Section 113(f)(1) and (2) provide in pertinent part:

**(1) Contribution**
Any person may seek contribution from any other person who is liable or potentially liable under 9607(a) of this title, during or following any civil action under 9606 of this title or under 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal Law.

**3.** 42 U.S.C. § 9613(f)(2) provides:

**(2) Settlement**
A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims in contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but reduces the potential liability of the others by the amount of the settlement.

bution for payment of response costs or performance of response actions against PRPs who have settled their liabilities with the United States or a State in an administrative or judicially approved settlement. *Cannons Eng'g*, 899 F.2d at 92; 42 U.S.C. § 9613(f)(2).

Plaintiff argues that the Consent Order between Fleet and GEPD is not an "administrative or judicially approved settlement" under section 113(f)(2) because: (1) it does not expressly provide for contribution protection under § 113(f)(2); (2) it does not mention CERCLA liability; (3) the statutory procedural requirements under section 122(i) were not followed; and (4) no notice of or opportunity to be heard on the settlement was provided in violation of General Time's procedural due process rights.

■ First, Plaintiff contends that § 113(f)(2) does not bar its claim for contribution because the Consent Order, unlike the Model EPA Consent Decree, does not specifically state that section 113(f)(2) contribution protection is provided. The Court rejects this argument. The language in § 113(f)(2) is unequivocal in its grant of contribution protection to PRPs who settle with a State or the federal government. The statutory language does not require the settlement to specifically refer to section 113(f)(2) or to explicitly confer contribution protection.[4] Moreover, in *Comerica Bank–Detroit v. Allen Indus., Inc.*, 769 F.Supp. 1408 (E.D.Mich. 1991), the district court approved a settlement that was silent on the issue of contribution protection. *Id.* at 1410 ("the State/GM agreement is silent as to contribution protection").[5] Thus, the absence of any contractual language providing contribution protection does not preclude the operation of § 113(f)(2).

■ Second, General Time contends that the Consent Order is not an "administrative or judicially approved settlement" giving rise to § 113 protection because the Consent Order does not mention CERCLA liability.[6]

Fleet, however, implicitly argues that a settlement resolving a party's violation of a state's environmental laws releases a PRP from contribution liability under CERCLA.

In *C.P.C. Int'l, Inc. v. Aerojet–General Corp,* 759 F.Supp. 1269 (W.D.Mich.1991), the defendants argued that a stipulation and consent order involving responsibility for cleaning up groundwater contamination, which was executed before CERCLA was enacted, barred subsequent CERCLA contribution actions brought by other parties. The district court held that the settlement agreement did not bar the plaintiff's claim for contribution because § 113(f)(2) contemplated a settlement of CERCLA liability. *Id.* at 1283; *Akzo Coatings, Inc. v. Aigner Corp.,* 803 F.Supp. 1380, 1383 (N.D.Ind.1992) (§ 113(f)(2) "insulates a potentially liable party who has settled a CERCLA action").

The Court notes that every case cited by Fleet in support of its contention that the Consent Order is the type of administrative settlement contemplated by section 113(f)(2) involved settlements of CERCLA liability. *See e.g., Cannons Eng'g,* 899 F.2d at 92; *Pretty Products,* 780 F.Supp. at 1492; *Comerica Bank–Detroit, Inc. v. Allen Indus.,* 769 F.Supp. 1408 (E.D.Mich.1991); *United States v. Union Gas Co.,* 743 F.Supp. 1144 (E.D.Pa. 1990); *New York v. Exxon Corp,* 697 F.Supp. 677, 699 (S.D.N.Y.1988). In the instant case, however, unlike the above cited cases and like *Aerojet,* the Consent Order does not resolve CERCLA liability. Rather the order specifically states that "the Director of the EPD and Respondent desire to resolve the matter of violations of the *Georgia Hazardous Waste Management Act* and necessary corrective action at the site." (Emphasis added). Consequently, the Court concludes that the Consent Order does not preclude General Time from seeking contribution from Fleet under § 113(f)(1) because it is not a settlement of CERCLA liability.

---

4. The same is true for the protection provided for under O.C.G.A. 12–8–96.1(f).

5. The absence of explicit contribution protection was not at issue in *Comerica.* Nevertheless, the district court implicitly recognized that such language was unnecessary by approving the settlement.

6. Plaintiff raised this argument for the first time at oral argument.

The Court acknowledges that *Aerojet* is distinguishable from the instant action because CERCLA was in effect when the Consent Order was executed and that the overriding policy in enacting section 113(f) was to provide PRPs with an incentive to settle. *Cannons Eng'g*, 899 F.2d at 92 ("[t]his provision was designed to provide PRPs a measure of finality in return for their willingness to settle."); *see generally* Note, *Superfund Settlements: The Failed Promise of the 1986 Amendments*, 74 Va.L.R. 123 (1988). Nonetheless, the Court does not believe Congress intended for settlements effected under a state's environmental statute to confer CERCLA contribution protection. Furthermore, the Court's decision does not circumvent the strong pro-settlement policy underlying SARA because the Georgia Hazardous Site Response Act provides its own incentive to settle. *See* O.C.G.A. § 12–8–96.1(e) (providing contribution protection to those who enter a voluntary consent order with the director of the GEPD).

Additionally, even if a state consent order resolving liability under a state statute is an administrative settlement recognized by under § 113(f)(2), the Consent Order in the instant case would not confer contribution protection because barring Plaintiff's contribution claim would violate due process. Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Although an in-depth hearing concerning a settlement is not required, *see Cannons Eng'g*, 899 F.2d at 93, *Comerica*, 769 F.Supp. at 1411, due process concerns are magnified when a PRP seeks to use an administrative settlement to extinguish another PRP's contribution rights. Congress' obvious concern with procedural due process is evidenced by Section 122, which was add-

ed, and Section 308, which was amended as part of SARA.

Section 122 of CERCLA[7] authorizes the EPA[8] to "facilitate agreements" with potentially responsible parties "in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a). The section, which is a procedural mechanism for the EPA to enter into settlements and carry out its authority under sections 104, 106 and 107,[9] permits the EPA to enter the following types of settlements: (1) a clean-up settlement in which PRP's agree to do the clean up work, 42 U.S.C. § 9622(d), which must be entered as a consent decree subject to mandatory judicial review, *Exxon Corp.*, 697 F.Supp. at 691, unless it is a de minimis administrative settlement, 42 U.S.C. § 9622(d)(1)(A); (2) a cost recovery settlement under section 107, 42 U.S.C.A. § 9622(h)(1); and (3) a de minimis cash-out settlement, which covers a small percentage of the required response costs, under either section 106 or 107. 42 U.S.C. § 9622(g)(1). The latter two settlements may be administrative or judicially approved.

Pursuant to Section 122(i) the head of the department or agency, which has jurisdiction over the proposed settlement, is required to publish notice of both de minimis and cost recovery settlements in the Federal Register with a 30 day public comment period to follow before the settlement may become final. 42 U.S.C. § 9622(i)(1, 2); 28 C.F.R. § 50.7. Section 122's notice and comment procedure are imposed only on the federal government not other plaintiffs.[10]

Section 308 provides that "[i]f an administrative settlement under section 9622 ... has the effect of limiting any person's right to contribution from any party to such settlement, and if the effect of such limitation would constitute a taking without just com-

---

7. The section is titled "Settlements."

8. The statute specifically gives settlement authority to the President but the power has been subdelegated to the Administrator of the EPA. *Cannons Eng'g*, 899 F.2d at 83 n. 1.

9. Section 104 permits the EPA to initiate its own site clean up. 42 U.S.C. § 9604. The Superfund money used to finance the clean-up may then be

recovered pursuant to a section 107(a)(4)(A) cost recovery action against PRPs. Under section 106 the EPA may either issue an administrative orders or seek injunctive relief mandating that the PRPs clean up the site themselves. 42 U.S.C. § 9606(a).

10. Thus, § 9622(i) is inapplicable to the instant action.

pensation in violation of the fifth amendment of the Constitution ..., such limitation on the right to contribution shall not be treated as having no force and effect." 42 U.S.C. § 9657. Thus, the SARA amendments demonstrate that Congress recognized the danger in permitting an administrative settlement to extinguish claims for contribution and sought to ensure that an administrative settlement comply with procedural due process requirements before it could bar claims for contribution. *See* Handly, *"CERCLA Contribution Protection: How Much Protection,"* 22 Envtl.L.Rep. 10,542 (August 1992); Neuman, *"No Way Out? The Plight of the Superfund Nonsettlor,"* 20 Envtl.L.Rep. 10,-295 (July 1990).

Case law also supports the view that the statutorily created right of contribution [11] is a property interest, which cannot be extinguished without procedural due process of law. *See Aerojet,* 759 F.Supp. at 1283. In *Aerojet,* after concluding that section 113 did not provide the defendants any protection because it did not resolve CERCLA liability, the district court further noted that the consent order failed to qualify as an "administrative or judicially approved settlement" even though it was signed by the Michigan Department of Resources and the attorney general's office because "the negotiation process was devoid of any public hearings or public comment that might give rise to an argument that the contribution claims should be barred." *Id.* Similarly, in the instant action the Consent Order is devoid of any due process aspects that would make a bar to General Time's contribution claim fair.

Fleet, however, argues that the alternative holding in *Aerojet* is pure dicta and in conflict with *Cannons Engineering* and *Unit-*

ed States v. Serafini, 781 F.Supp. 336, (M.D.Pa.1992). In *Cannons Engineering* the First Circuit held that non-settling PRPs do not have a due process right to be included in or kept aware of the settlement process. 899 F.2d at 93. In *Serafini* the district court held that PRPs do not have a due process right to participate in a settlement that gives rise to the contribution protection conferred under section 113(f)(2). 781 F.Supp. at 339. General Time, however, does not argue that procedural due process requires the right to participate or to kept aware of the settlement process. Rather, Plaintiff argues that due process mandates that a PRP receive notice and an opportunity to comment on the settlement before it can be precluded from seeking contribution.

Moreover, in contrast to the instant action, the settlements in *Cannons Engineering* and *Serafini* were both published in the Federal Register. *See Serafini,* 781 F.Supp. at 339 (plaintiffs received constructive notice of settlement, because, pursuant to section 122(i), the proposed settlement was published in the Federal Register on no less than *five* separate occasions); [12] *Cannons Engineering,* 899 F.2d at 83 ("[a]s required by statute, notice of the decrees' proposed entry was published in the Federal Register.") In fact, in *Serafini* the publication of the proposed settlement effectively foreclosed the non-settlors' due process arguments. 781 F.Supp. at 339. Consequently, neither case contradicts the recognition in *Aerojet* that a statute barring claims for contribution contemplates that the barred party be provide notice and an opportunity to be heard.

Fleet, however, citing Georgia Rule 391–1–2–.06(4)(a) [13], O.C.G.A. §§ 12–8–73 [14] and 12–

---

**11.** The right of contribution does not exist as a matter of federal common law. *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981).

**12.** The Court questions whether constructive notice is sufficient. *See* Neuman, *"No Way Out? The Plight of the Superfund Nonsettlor,"* 20 Envtl. L.Rep. 10,295 (July 1990) (discussing *Tulsa Professional Collection Service v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988), which held that before a creditor's rights against decedent may be cut off under a probate nonclaim statute, the government is required to give actual notice of the probate proceeding to all known or reasonably ascertainable creditors.)

**13.** Georgia Rule 391–1–2–.06(4)(a) provides:

Within thirty days of the issuance of any order, notice, or any other action not covered in paragraphs (1) through (3) above under any of the laws administered by DNR and in which the legal rights, duties or privileges of a person are required by law to be determined by DNR after an opportunity for a hearing, any person aggrieved or adversely affected thereby may file may file a written petition for hearing with the clerk.

**14.** The statute provides:

All hearings on and the review of contested matters, orders, or permits and all hearings on

2–2(c)(2), asserts that General Time had an opportunity to appeal the Consent Order and chose not to do so. O.C.G.A. § 12–8–73 provides a two step test for determining whether an action by the GEPD is reviewable. First, it must be an order or action taken by the Director. Second, it must aggrieve or adversely affect a party. O.C.G.A. §§ 12–8–73, 12–2–2(c)(2).

 Although the Consent Order meets the first step of the test, the Court concludes it fails the second step. "Persons are aggrieved or adversely affected, . . ., where the challenged action has caused or will cause them injury in fact and where the injury is to an interest within the zone of interests to be protected or regulated by the statutes the director is empowered to administer and enforce." O.C.G.A. § 12–2–2(c). Persons are not aggrieved or adversely affected, however, "by an order of the director issued pursuant to Part 2 of Article 3 of Chapter 8 of this title, the 'Georgia Hazardous Site Response Act,' *unless or until the director seeks to recover response costs, enforce the order, or recover a penalty for violation of such order.*" O.C.G.A. § 12–2–2(c)(3)(B) (emphasis added). In the instant case, the Consent Order does not concern any of the italicized exceptions. Therefore, General Time had no opportunity to contest the Consent Order in order to protect its contribution rights.

 Furthermore, even if the Consent Order is an action to enforce an order, there is absolutely no evidence that General Time was ever given notice that the Consent Order had been executed so that General Time could challenge the order. Consequently, the Court concludes that section 113(f)(2) of

CERCLA does not bar Plaintiff's claim for contribution because General Time was not provided notice or an opportunity to be heard.

## II. O.C.G.A. § 12–8–96.1(f)

 Fleet further claims that even if it does not have protection from contribution under 42 U.S.C. § 9613, O.C.G.A. § 12–8–96.1(f) bars Plaintiff's claim for contribution. O.C.G.A. § 12–8–96.1(f) provides:

> A person who has voluntarily agreed to perform corrective action pursuant to an administrative consent order with the director shall not be liable for claims for contribution regarding matters addressed in the administrative consent order.

Admittedly, Fleet agreed to perform corrective action pursuant to an administrative consent order with the director. Nevertheless, as stated above, General Time was not provided with notice or an opportunity to be heard. Consequently, the Consent Order may not bar Plaintiff's claim.[15]

### CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion to dismiss is **DENIED**.

SO ORDERED.

and the review of any other enforcement actions or orders under this article shall be provided and conducted in accordance with subsection (c) of Code Section § 12–2–2. The hearing and review procedure provided herein is to the exclusion of all other means of hearing or review.
O.C.G.A. § 12–8–73.

15. The Court also notes that even if due process requirements were met, the Consent Order explicitly states that it covers "violations of the Georgia Hazardous Waste Management Act and necessary corrective action." The GHWA con-

tains its own provision permitting the director to enter into a consent order for necessary corrective action, O.C.G.A. § 12–8–71(b), without a corresponding section providing for or prohibiting an action for contribution where there is a consent order. General Time, however, is pursuing its statutory state law claim pursuant to § 12–8–96.1(e). Arguably, if 12–8–96(b) is not merely redundant of 12–8–71(b), General Time is not precluded from seeking contribution since Fleet and the GEPD presumably were proceeding under § 12–8–71(b) when they executed the Consent Order.