Frank J. KELLEY, Attorney General of the State of Michigan, ex rel., and Michigan Department of Environmental Quality, Plaintiffs,

v.

A.T. WAGNER, Akzo Coatings, Inc., American Can Corporation, Argo, Arkwright, Dobeckmun Paint Co., Gage Products, General Electric, Kux Manufacturing Company, Mac–O–Lac, Michlin Chemical, Standard Detroit Paint, Inc., and Valspar Corp., Defendants.

No. 95–71291.

United States District Court, E.D. Michigan, Southern Division.

June 18, 1996.

Mary S. Rigdon, Asst. U.S. Attorney, Detroit, MI, for Plaintiff.

Frances M. Zizila, Washington, D.C., for Env. Enforcement Section U.S. Dept. of Justice.

Robert Young, King, Young & Billmeyer, Allen Park, MI, Gary R. Letcher, The Harker Firm, Washington, D.C., for Defendant Akzo Nobel.

Douglas A. Donnell, Mika, Meyers, Beckett & Jones, P.L.C., Grand Rapids, MI, Donald R. Dixon, Ferndale, MI, for Gage Products Company.

Daniel King, Pendersen, Keenan, King, Wachsberg, Andrzejak, P.C., Farmington Hills, MI, for Argo Paint.

Howard E. Jarvis, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Firestone.

Brian Clark, General Counsel, Chemical Waste Management, Inc., Oak Brook, IL, David H. Fink, Cooper, Fink & Zausmer, Farmington Hills, MI, for Chemical Waste Management, Inc.

Ulysses Whittaker Boykin Lewis, White & Clay, Detroit, MI, for General Electric Co.

Mark S. Demorest, Hainer & Demorest, P.C., Troy, MI, for Champion Motor Coach.

Paul S. Lewandowski, Butzel Long, PSL, Detroit, MI, for Sea Ray Boats, Inc.

James A. Thompson, Ronald W. Zdrojeski, David G. Hetzel, Le Boef, Lamb, Green & Mac Rae, L.L.P., Hartford, CT, for Metamora Settling PRP Group.

Neill Peters, Michael J. Nolan, Kohl, Harris & Peters, Metamora, MI, for Metamora Township.

Carol W. Grombala, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for A.T. Wagner Company.

Eugene E. Smary, John D. Tully, Warner Norcross & Judd, Grand Rapids, MI, for Standard Detroit Paint.

Michael S. Elder, Goodwin, Procter & Hoar, Albany, NY, for General Electric Co.

Mary Rigdon, Assistant United States Attorney, Detroit, MI, for United States of America.

Robert Young, King, Young & Billmeyer, Allen Park, MI, Gary R. Letcher, The Harker Firm, Washington, D.C., for Akzo Nobel Coatings.

Richard J. Bahls, Bahls & Shamblin, Lapeer, MI, for Village of Metamora.

Brian D. Devlin, Assistant Attorney General, Environmental Protection Division, Lansing, MI, for MDNR.

Connie Puchalski, Section Chief, U.S. EPA—Region 5, Chicago, IL, for Environmental Protection Agency.

Karl S. Bourdeau, Beveridge & Diamond, P.C., Washington, D.C., Michael Kay, The Dow Chemical Company, Midland, MI, Bernard P. Paige, Patrick J. Ennis, Colombo & Colombo, P.C., Bloomfield Hills, MI, for The Dow Chemical Company.

### OPINION AND ORDER

FEIKENS, District Judge.

#### Background

This is an action for recovery of response costs incurred in connection with the cleanup of a facility known as the Metamora Landfill Site ("the Site") brought pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA").[1]

---

1. This action, brought by the State for recovery of its response costs, has recently been consoli-

Plaintiffs, Michigan Attorney General Frank Kelley and the Michigan Department of Environmental Quality (collectively "the State"), and Defendant, General Electric ("GE") ask this court to approve a Consent Decree to settle the State's claims against GE for costs "incurred or to be incurred by the State" in responding to actual or threatened releases of hazardous substances at the Site for $35,000.[2]

Defendant Akzo has objected to entry of the Consent Decree. Akzo initially submitted multiple objections, but at oral argument, counsel for Akzo stated that Akzo's only difficulty with the Consent Decree is the inclusion of overly broad language, underlined below, at Paragraph IX, which provides:

> Pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) and to the extent provided in Section VII, Defendant [GE] shall not be liable for claims of contribution regarding matters addressed in this Consent Decree. "Matters addressed" means all response costs incurred or to be incurred by the State, *or any other party* at or in connection with the Facility, including, but not limited to, all removal and remedial costs. (emphasis added).

By including the language underlined above, Akzo argues that the State is attempting to offer GE protection from contribution claims for costs incurred by the United States and/or private parties in addition to protection from contribution claims for costs incurred by the State. In return, the agreement calls for GE to pay to the State an amount ($35,000) which, when divided by the State's total response costs (approximately $3.5 million), is roughly equivalent to the

estimated fraction of the Site's waste which the United States Environmental Protection Agency (EPA) has attributed to GE.[3] Because the proposed settlement would impose costs on GE that reflect its share of liability to the State, Akzo does not dispute the fairness of allowing GE to be shielded from potential claims seeking contribution for costs incurred by the State. What Akzo does dispute is the right of the State to hold out, as a carrot to entice settlement of the State's claims only, protection from contribution for response costs that are not, or in the case of future costs, will not be, associated with the State's efforts, but rather with the response actions of the United States or private parties. Akzo contends that it is beyond the State's authority to offer such blanket contribution protection. Moreover, inasmuch as CERCLA is intended to roughly apportion liability in accordance with fault, Akzo argues it would be inconsistent with the statutory scheme, and unfair to other Potentially Responsible Parties ("PRPs"), to allow GE to potentially shield itself from liability for cleanup of the Site performed or to be performed by the United States (allegedly about $36 million) or private parties (allegedly about $55 million) when the use of the EPA's volumetric estimate, adopted by the State itself as the correct barometer of liability, suggests that GE is responsible for approximately $642,600 in cleanup costs.

In its Memorandum in Support of Entry of Consent Decree, the State argues that Paragraph IX is limited by Section VII in such a way that GE will not be able to bar contribution claims against GE for costs incurred or to be incurred by the United States and

---

dated with another case, *United States v. Akzo Nobel Coatings, Inc.*, No. 95–CV–71470, brought by the United States for recovery of response costs it has incurred in cleaning up the Site.

**2.** The whole gist of the Consent Decree is settlement of costs incurred or to be incurred by the State. Except for one provision in Section IX, which is discussed *infra*, it is not directed to settlement of costs incurred by the United States or voluntarily incurred by other PRPs. This is unsurprising, as these are not parties to this decree.

**3.** The State has submitted the sworn affidavit of Anne Pulley, an employee of the Michigan De-

partment of Environmental Quality, which states that, based on the EPA's volumetric allocation figures, she calculated the contribution of GE to be .68 percent of the Site's waste by volume. The Consent Decree, for purposes of estimating liability, rounds this figure up to one percent. GE points out that it is not admitting to any culpability within the Consent Decree and that it continues to maintain that it is not liable for any of the response costs associated with the Site; it agreed to settle for one percent of the State's costs to minimize litigation costs. In this opinion, I use the .68 percent figure as the best estimate of GE's proportionate share of cleanup costs for the Site.

private parties. Section VII, entitled "COVENANT NOT TO SUE BY PLAINTIFFS AND RESERVATION OF RIGHTS," provides:

> 7.2 "Covered Matters" shall include liability to the State of Michigan under applicable state and federal law relating to the Facility for reimbursement of past response costs incurred by the State prior to September 30, 1994, and response costs which accrued subsequent to September 30, 1994 or which may accrue in the future, in responding to the release or threat of release at the facility, subject to Sections 7.3, 7.4, 7.5, 7.6, and 7.7.

"Covered Matters" are those matters that the State covenants not to pursue against Defendant GE in a court of law or by agency action.

It is perhaps telling of GE's future intentions with regard to seeking contribution protection that it does not advance the argument that Section VII limits the language of Paragraph IX in the manner that the State suggests. Instead, GE emphasizes that two previous Consent Decrees between the State and other PRPs, containing identical language, were not objected to by Akzo and were approved by the court. Without offering any case law in support, GE appears to be suggesting that Akzo should now be estopped from objecting to the language in Paragraph IX now.

Moreover, while acknowledging the court's right to review the proposed Consent Decree, both the State and GE emphasize that the State is accorded considerable latitude in fashioning settlements and that case law favors the prompt settlement of CERCLA claims. GE also argues that any "disproportionate liability" that Akzo may ultimately bear will be the result of Akzo's failure to settle; thus, the spectre of future disproportionate liability furthers CERCLA's objective of encouraging early settlement. Finally, GE notes that Akzo has not yet raised claims for contribution against GE and it is speculative that it will ever do so; thus, it is argued that Akzo's interests in the settlement at

hand are not sufficient to warrant rejection of the Consent Decree.

### Issue

The question presented here is what is the extent of the limitations that a governmental entity, such as the State, and a PRP, such as GE, can impose on the right of other PRPs to seek contribution from the settling PRP. Restating the issue in precise legal terms requires a brief review of the sections of CERCLA dealing with contribution rights.

In 1986, Congress added § 113(f) to CERCLA as part of SARA. Section 113(f)(1) provides for an express right of contribution among PRPs as follows:

**(1) Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under 9607(a) of this title, during or following any civil action under 9606 of this title or under 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal Law.

42 U.S.C. § 9613(f)(1).

The power to impose limitations on this statutorily created right to contribution, in order to facilitate settlement, arises from the same statute. Section 113(f)(2) of CERCLA provides:

**(2) Settlement**

A person who has resolved liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding **matters addressed** in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement. (emphasis added).

42 U.S.C. § 9613(f)(2).

Restated, then, the legal issue before me is to what extent parties to a settlement with a State or the United States can define the "matters addressed" in the settlement[4] so as

---

4. It is clear that this is exactly what the parties to the Consent Decree are attempting to do, as that

document explicitly defines "matters addressed" as "all response costs incurred or to be incurred

to preclude, pursuant to 42 U.S.C. § 9613(f)(2), other PRPs from seeking contribution under 42 U.S.C. § 9613(f)(1).

### Legal Analysis

■ Initially, I note that I do not believe that the State's argument that Section VII of the Consent Decree limits Paragraph IX to preclude claims against GE for costs incurred by the United States or private parties has any merit. The State is implying that the term "covered matters" in Section VII is equivalent to the term "matters addressed" in Paragraph IX. An examination of the two sections makes clear, however, that the two terms are independent. One ("matters addressed") is inserted for the purpose of determining the scope of contribution protection; one is present for purposes of establishing the subject matter that the State includes in its Covenant Not To Sue. Moreover, each is accompanied by different definitional language. It is clear that the Covenant Not To Sue is not dispositive of the contribution protection issue. *Akzo v. Aigner,* 30 F.3d 761, 766 (7th Cir.1994).

### Standard of Review

■ To warrant judicial approval, the Consent Decree must be: 1) fair, 2) reasonable, and 3) consistent with the purposes of CERCLA. *United States v. Akzo Coatings,* 949 F.2d 1409, 1426 (6th Cir.1991) Because CERCLA imposes a scheme wherein PRPs are jointly and severally liable for response costs associated with cleaning up hazardous substances that have been released into the environment at certain facilities such as the Site, *General Time Corporation v. Bulk Materials, Inc.,* 826 F.Supp. 471, 474 (M.D.Ga. 1993) (citing *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1493 (S.D.Ohio 1991)), a consideration of the fairness of a Consent Decree must include consideration of the effect of the settlement on non-settlers. *Akzo Coatings,* 949 F.2d at 1435. Thus, I must ask what legal effect the inser-

tion of the proposed definition for "matters addressed" will have on non-settling PRPs, and whether such effect comports with fairness, reasonableness, and the purposes of CERCLA. In reaching my decision, I "must eschew any rubber stamp approval in favor of an independent evaluation" of the Consent Decree. *United States v. Hooker Chemicals,* 540 F.Supp. 1067, 1072 (W.D.N.Y.1982).

### Legal Effect of Definition of Matters Addressed

In its memorandum, GE has urged me to follow the lead of the district court in *Arizona v. Nucor Corporation,* 825 F.Supp. 1452, 1465 (D.Ariz.1992) in deferring consideration of the non-settling PRPs' objections that the contribution provision of the proposed settlement is too broad in scope; the district court in Arizona agreed with the settling parties that the issue could be resolved if and when a claim allegedly barred by the settlement was actually asserted. For the reasons which follow, I decline to delay in resolving the issue.

A review of the case law reveals that at least one court has been willing to find that the term "matters addressed" in a settlement[5] of CERCLA liability between a PRP and a State and/or the Federal Government encompasses costs incurred by a non-settling PRPs. *Aigner,* 30 F.3d at 765–770 (costs voluntarily incurred by Akzo, a non-settler, to perform a study to evaluate the extent of liability of various PRPs for a site held to be a "matter addressed" in settlement between Aigner and government).

■ The U.S. Court of Appeals for the Seventh Circuit is one of the few courts that has addressed the possibility that the parties to a Consent Decree might explicitly define "matters addressed," as the parties in this case have done. In *Aigner,* the court of appeals noted that if the settling parties had included "terms explicitly describing the 'matters addressed' by their settlement, then those terms will be highly relevant to, and

by the State, or any other party at or in connection with the Facility...."

**5.** This determination is usually made sometime after the settlement has been either judicially approved or subjected to Notice and Comment in

the Federal Register. These cases generally do not indicate whether objections such as those raised by Akzo here were made before the settlements were approved.

perhaps even dispositive of, the scope of the contribution provision." 30 F.3d at 766, n. 8. The court further noted that an explicit definition of "matters addressed" "could obviate any need to consider the breadth" of contribution protection. *Aigner*, 30 F.3d at 768, n. 14. This is consistent with the dictate that consent decrees are to be construed as a matter of contract law. *U.S. v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Thus, unambiguous provisions are to be given effect.

The implication is that if I approve the Consent Decree as written now and Akzo later attempts to seek contribution from GE, the presence of the explicit definition of "matters addressed," implicitly approved by me, may be viewed as dispositive without further consideration of the ramifications upon due process and CERCLA policy. If I leave this decision for another day, I would be abdicating my responsibility to review consent decrees before approving them.

### Fairness

■ The main objection to entry of the Consent Decree is that it is unfair. Indeed, in at least one case in which a settling PRP attempted to claim contribution protection for costs incurred by a party that had not signed the settlement agreement conferring protection, the court noted that to grant such protection might constitute a denial of due process. *General Time Corp.*, 826 F.Supp. at 476 (in dicta, the district court said that barring the contribution claims of a non-settling private party that had voluntarily incurred costs consistent with the State's emergency response plan would "violate due process."); *see also* Barry S. Neuman, *No Way Out? The Plight of the Superfund Nonsettlor*, 20 Envtl.L.Rep. 10295 (July 1990).

It is clear that Congress was concerned about due process when it enacted SARA, for it included provisions for judicial review or, in the case of administrative settlements, notice in the Federal Register and a thirty-day comment period in section 122 of CERCLA. 42 U.S.C. § 9622(a). Although § 122 expressly applies to settlements with the federal government only, *General Time Corp.*, 826 F.Supp. at 476, the enactment of the provision nevertheless reveals Congress' perceived need for procedural due process, as does § 308 of CERCLA, which provides that "[i]f an administrative settlement under section 9622 ... has the effect of limiting any person's right to contribution from any party to such settlement, and if the effect of such limitation would constitute a taking without just compensation in violation of the fifth amendment of the Constitution ..., such limitation on the right to contribution shall be treated as having no force and effect." 42 U.S.C. § 9657.

By submitting the Consent Decree to this court for review, and thus giving Akzo an opportunity to be heard, the requirement for procedural due process has been satisfied, provided that this opportunity to be heard is at "a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Thus, it is necessary for me to consider the substantive fairness of the Consent Decree at this time.

■ As a matter of substantive fairness, a CERCLA settlement must be based upon and roughly correlated to an acceptable measure of comparative fault, apportioning liability among PRPs according to rational estimates of fault. *United States v. Cannons*, 899 F.2d 79, 87 (1st Cir.1990). As noted by the State and GE, "the court's role is not to determine the best method for measuring fault and apportioning liability." *Nucor*, 825 F.Supp. at 1459. However, I should not uphold the Consent Decree if the basis for apportioning liability is "arbitrary, capricious, and devoid of a rational basis."

I find that the definition of "matters addressed" in the Consent Decree turns an otherwise apparently reasonable settlement into one that appears to assess GE's liability in a non-rational manner. The definition of matters addressed, if taken at face value, potentially [6] gives GE complete finality with respect to all liability for cleanup of the Site. The total amount of liability is estimated to

---

**6.** Of course, the United States might pursue its own cost recovery action against GE; as yet, it has not included GE as one of the defendants in its suit.

be about $95 million, and GE is estimated to be responsible for .68 percent of that figure (about $646,000). The figure suggested for settlement falls far short of that number. I do not judge whether this is the "best" settlement possible, but the State and GE have failed to explain how they rationally arrived at a figure that does not appear to be "in the ballpark" of the State's own estimate of GE's liability. I appreciate that the avoidance of litigation costs and other considerations could lower the settlement figure. Instead of hearing explanations of that nature, the State at oral argument instead insisted the settlement is fair because it represents one percent of the costs that the State has incurred. This argument ignores the fact that the "matters addressed" provision does appear to give contribution protection to GE for much more than the State's costs. The argument in the State's papers that the language of Section VII limits the contribution provision is similarly disingenuous. Based on this, I am inclined to believe that the State threw in the provision in Paragraph IX as a bargaining chip, hoping that the issue of whether it had any rights to this bargaining chip would not surface until much later, when and if a non-settling PRP seeks contribution from GE for costs incurred by it or the United States. Thus, it would appear that the $35,000 figure was not arrived at by a rough attempt at an apportionment of fault, as required by *Cannons*. Thus, I cannot approve of this Consent Decree based on considerations of fairness.

### Reasonableness

Using the EPA's volumetric estimate is a reasonable method of apportioning fault. *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 685–686 (D.N.J.1989). However, as noted in the discussion on fairness, this measure should be applied to the costs incurred by the State only in a settlement between the State and GE.

### Consistency with the Purposes of CERCLA

I do not perceive that the objectives of CERCLA will be thwarted by withholding approval of the Consent Decree. As the State and GE have pointed out, courts have concluded that § 113(f)(2) was "intended to encourage settlement while providing settling PRPs with a measure of finality in return for their willingness to settle." *United States v. Colorado & Eastern Railroad Company*, 50 F.3d 1530, 1537 (1995). At the same time, when Congress amended § 113 in 1986, a principal objective was to " 'clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties'," *Colorado & Eastern Railroad*, 50 F.3d at 1535, (quoting S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985)), thus mitigating the harshness of the joint and several liability rule.

The State does not need to offer a PRP total immunity from liability in order to offer a "measure of finality." When the State offers immunity from contribution for costs incurred by the state, it is indeed offering a degree of finality. It seems that this is the finality that is contemplated in § 113(f)(2), which provides that the potential liability of other PRPs is reduced by the amount of the settlement. By settling now with the State, a PRP frees itself from the risk that it will be held responsible for a greater share of the State's costs at a later date, to the peril of the non-settlers. At the same time, the policy in favor of a roughly equitable apportionment of costs, according to fault, is preserved by limiting contribution protection to those costs that are incurred by the State.

In addition, it is within the public interest to encourage voluntary cleanups. To allow a State to offer protection for claims for contribution for costs voluntarily incurred by a private party could deter private parties from undertaking such cleanups for fear of being "stuck" with the full bill. Certainly, this is not consistent with the objectives of CERCLA.

### *Conclusion*

For the reasons set forth above, Plaintiff's motion for entry of the Consent Decree between Plaintiff and GE is DENIED.

IT IS SO ORDERED.