In the Matter of the Assignment for the Benefit of Creditors. DIAL-N-DRIVE RENT A CAR NETWORK, INC., Assignor; JOHN R. MARVIN, Assignee; STATE OF NEW YORK, Appellant; UNITED STATES OF AMERICA, Respondent.

Second Department, April 24, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Earl S. Roberts, Stephen Mindell, James P. Pagano* and *Samuel A. Hirshowitz* of counsel), for appellant.

*David G. Trager, United States Attorney (Prosper K. Parkerton, Mary McGowan Davis, Theodore E. Davis* and *Thomas C. Boscarino* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

On April 7, 1972 Dial-N-Drive Rent a Car Network, Inc. (Dial-N-Drive) filed an assignment for the benefit of creditors under section 3 of the Debtor and Creditor Law. Prior to both the assignment and the termination of its business, Dial-N-Drive had accepted deposits totaling $9,710.83 from 65 of its customers as security for the performance of auto rental contracts. In this accounting proceeding, the assignee, John R. Marvin, in addition to having his final account judicially settled, also requested the court to determine priorities between the claims of the 65 customers for refunds of the security deposited with the assignor debtor and the claim of the United States of America under a tax lien for tax arrears.

The Attorney-General, shortly after the granting of his application for leave to have the State of New York intervene on behalf of the 65 customers, cross-moved to impress a trust upon the receipts marshalled by the assignee to the extent of the aggregate amount ($9,710.83) of the customers' claims. The final account shows receipts of approximately $95,500 in the hands of the assignee. The total tax lien of the United States for tax arrears is approximately $93,000. It is conceded that Dial-N-Drive, when it received the security deposits, did not place the moneys into a separate trust account.

The Attorney-General relies upon the following language contained in subdivision 1 of section 7-101 of the General Obligations Law in support of his cross motion to impose a trust for the benefit of the 65 customers demanding refunds of their deposits: "Whenever money shall be deposited or advanced on a contract for the use or rental of personal property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such

deposit or advance and shall be a trust fund in the possession of the person with whom such deposit or advance shall be made and shall be deposited in a bank or trust company and shall not be mingled with other funds or become an asset of such trustee."

The Federal Government bases its tax lien on section 6321 of title 26 of the United States Code, entitled "Lien for taxes", and its priority claim on section 191 of title 31 of the United States Code, entitled "Priority established". Those statutes provide as follows:

Section 6321, Lien for Taxes: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 191, Priority established: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof; or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The cross motion of the Attorney-General to have a trust impressed for the benefit of the 65 customers seeking refunds of their security deposits was denied by Special Term on the ground that a statutory trust under subdivision 1 of section 7-101 of the General Obligations Law was never established by the assignor because it commingled such deposits with its general funds. Special Term then concluded that the Federal claim had priority since it matured at the time of the assignment (see US Code, tit 31, § 191), while the 65 customers were, in effect, general creditors of the assignor under a debtor-creditor relationship. I disagree.

What Special Term failed to perceive in this instance is that under the State statute (1) title to the moneys deposited with the auto rental company assignor remained in the 65 customers and (2) such moneys, when deposited with the lessor,

attained the status of a trust fund *eo instante.* This is clearly manifested by the statute's provision, *inter alia,* that money deposited on a rental contract "shall continue *to be the money of the person making such deposit or advance and shall be a trust fund in the possession of the person with whom such deposit or advance shall be made"* (General Obligations Law, § 7-101, subd 1; emphasis supplied). The thrust and effect of such language is to change the relationship of the customer with the lessor of personal property, when a security deposit is made, from that of a debtor-creditor to a trust relationship (see *Mallory Assoc. v Barving Realty Co.,* 300 NY 297). In *Mallory,* in construing former section 233 of the Real Property Law (now General Obligations Law, § 7-103, the real property counterpart of section 7-101 of the General Obligations Law), the Court of Appeals succinctly stated (pp 299-302):

"Prior to the enactment of section 233 of the Real Property Law [now General Obligations Law, § 7-103] * * * and in the absence of facts from which a contrary intention could be inferred * * * it was uniformly held that a deposit of security by a tenant under a lease created a debtor-creditor relationship and that the landlord had the right to use such moneys until the date specified for repayment. * * *

"In enacting section 233, the Legislature was attempting to prevent the depletion of funds deposited with the lessor. The method used was to transform the usual debtor-creditor relationship between the lessor and the lessee into one of trust relationship, *by operation of law.* The security deposit paid over and *held in this State was the thing to be protected. The lessee, resident in this State, was the person to be protected"* (emphasis and bracketed matter supplied).

Essentially then, the trusts established by operation of law for the 65 customers of Dial-N-Drive were designed to protect consumers. A trust established by operation of law, or a "statutory trust", is neither a new nor a radical concept in American jurisprudence. Indeed, the statutory progenitors of section 7-101 of the General Obligations Law, to wit, sections 382-a and 382-b of the General Business Law, were enacted in 1920. As cogently stated in Bogert, Trusts and Trustees (2d ed, rev, § 246): "Trusts are often established or authorized by statute for the purpose of protecting *the property rights* of the weak or disabled, *holding property in suspense for the benefit of claimants,* accomplishing a sale, or otherwise adjusting the interests of parties which arise *in numerous family* and *busi-*

*ness situations.* No effort can be made here to enumerate all the cases in which the legislatures and courts employ the trust device to work out the results they desire" (emphasis supplied).

Thus, the stricture imposed upon the lessor under section 7-101, namely, to deposit such security payments "in a bank or trust company", and not to mingle them "with other funds or become an asset of such trustee", was designed to implement the trust already in existence from the time of deposit. It is not, as Special Term has indicated, a prerequisite for the creation of any trustee-*cestui que trust* relationship between the lessor and the customer (cf. *Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.],* 22 AD2d 352).

In arguing that there was no trust created here because the assignor established no separate account, respondent Federal Government analogizes the circumstances to tax cases and bankruptcy proceedings where an employer is required by statute to segregate withholding taxes as a trust (see, e.g., *Matter of Allied Elec. Prods.,* 194 F Supp 26). However, respondent fails to mention that under the Internal Revenue Code (US Code, tit 26, § 7501 ["Liability for taxes withheld or collected"]), it is provided that whenever any person is required to collect or withhold any internal revenue tax and pay it over to the United States, the amount of tax so collected or withheld "shall be held to be a special fund in trust for the United States." According to the *Allied Electric* case *(supra),* the intent of the statute was to afford the United States a maximum of assistance in the collection of withholding taxes. It did not specifically require the segregation of the sums withheld, but clearly contemplated such segregation in accord with sound accounting practice. In the statute before the court now under construction (General Obligations Law, § 7-101, subd 1), the trust fund was, as previously noted, created at the instant of deposit. Moreover, it should be mentioned that the determination in the *Allied Electric* case has not been universally followed. In *Hercules Serv. Parts Corp. v United States* (202 F2d 938), the Sixth Circuit held that where the bankrupt, as debtor in possession, failed to fulfill the statutory obligation to segregate moneys received for employees' income and social security taxes, the obligation of the United States to trace the diverted funds to establish the trust corpus ceased to exist.

I, therefore, conclude that the Federal statutes relied upon by the respondent (US Code, tit 26, § 6321 ["Lien for taxes"]

and US Code, tit 31, § 191 ["Priority established"]), whether read either in tandem or individually, should not defeat appellant's right to have a trust impressed to the extent of the total deposits collected by Dial-N-Drive from the 65 customers here involved. Since title to such deposits continued in those 65 customers, there could be no priority for a tax lien on such moneys in view of the fact that such moneys were never "owned" by the debtor assignor. Similarly, since the depositors for whom the Attorney-General intervened in this proceeding continued to hold title to such moneys, section 22 of the Debtor and Creditor Law, relating to the preferring of claims "before any other debt", etc., for persons who deposit no more than $300 for the "purchase" of retail merchandise, is likewise inapplicable. Here we have a trust relationship by statutory fiat in connection with the rental of personal property from the moment of deposit, whereas, under section 22 of the Debtor and Creditor Law, the relationship is obviously one of debtor-creditor between the retailer and the customer.

Finally, I believe that both the legislative intent manifested in section 7-101 of the General Obligations Law, and also equity, warrants reversal of Special Term's order. An affirmance would penalize the consumer for the failure of the lessor to establish a bank account for his protection despite the fact that the statutory purpose was to prevent the lessor from treating security deposits as his own money.

Accordingly, the order of Special Term should be reversed insofar as it has been appealed from and the cross motion of the Attorney-General to have a trust impressed for the benefit of the 65 customer depositors on $9,710.83 of the receipts in the hands of the assignee should be granted.

HOPKINS, J. P., LATHAM and DAMIANI, JJ., concur.

Order of the Supreme Court, Queens County, dated February 15, 1977, reversed insofar as appealed from, on the law, without costs or disbursements, cross motion of the Attorney-General granted, and proceeding remanded to Special Term for the entry of an appropriate amended order in accordance with the opinion of Mr. Justice TITONE.