**Alan M. STEINMETZ, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**TOYOTA MOTOR CREDIT CORPORATION, Defendant.**

**No. CV 96–4862 (ADS).**

United States District Court, E.D. New York.

May 5, 1997.

Kaufman Malchman Kirby & Squire, L.L.P., New York City (Roger W. Kirby, Ira M. Press, of counsel), for Plaintiff.

Bernstein Liebhard & Lifshitz, New York City (Mel E. Lifshitz, of counsel), for Plaintiff.

Mayer, Brown & Platt, New York City (Robert Shwarts, Michelle Odorizzi, of counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit is brought by the plaintiff, Alan Steinmetz, ("Steinmetz" or the "plaintiff") on behalf of a putative class of lessees against the defendant Toyota Motor Credit Corporation ("Toyota" or the "defendant") based on the defendant's allegedly unlawful leasing practices with respect to the security deposits that lessees are required to advance. Presently before the Court is Toyota's motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### I. Background

The following facts are taken from the Complaint. The plaintiff is a resident of Nassau County. The defendant is a California corporation which provides, among other services, financing in conjunction with leases offered by Toyota and Lexus dealerships nationwide including in New York. In connection with these lease transactions, Toyota operates as "both an assignee and an original lessor" in that it supplies the lease forms to the car dealers and extends and approves lessees' credit. Compl. ¶ 10. Further all lease payments are made directly to Toyota.

On January 22, 1993, Steinmetz entered into a lease agreement with an Inwood, New York based dealer known as "Five Town Toyota, Ltd." (the "Lease"). The Lease, which was on a Toyota form, was assigned to the defendant in accordance with its standard operating procedure and is scheduled to terminate at an unspecified time this year. In the Lease is a requirement that the lessee, in this case the plaintiff, pay a security deposit of $325 at the outset. The Lease further requires 48 monthly payments of $325 each for a total of $15,600. Upon executing the lease, the plaintiff paid the initial $325 monthly lease payment, a $325 security deposit and a $110 license fee. According to the Complaint, the funds paid for the security deposit were commingled with other Toyota moneys.

With respect to the security deposit, the Lease provides:

> You may use the security deposit to pay all amounts that you should pay under this Lease, but do not. If you perform all of your obligations under this Lease, the security deposit will be returned to you at the end of the Lease Term. No interest will accrue or be paid to you on he security deposit unless otherwise required by law.

Compl. ¶ 36, Lease ¶ 32.

Steinmetz claims that once the lessees transfer the security deposits to the defendant, they are used:

> in a manner that causes the deposits to increase in value through interest or other investment, or permits defendant otherwise to profit or enjoy other economic benefits from its possession of such deposits ("profits"). In some instances defendant converts the security deposit at lease inception, using, directly or as collateral, the Lessees' money to purchase the vehicle which is then leased to the Lessee. In other instances defendant realizes an "Earned Income Credit" from the security deposits that are deposited and held in the defendant's bank account, thereby reducing bank charges due on its accounts.

Compl. ¶ 39. According to the plaintiff, Toyota does not remit these profits to the lessees and does not apply them to reduce the secured obligation. Further, the Lease does not state that Toyota is entitled to retain these profits. Although the Lease does provide that there will be certain "Lease Charges" as a component of "Monthly Rental Payments," these charges do not include the profits on the security deposits "which defendant misappropriates." Compl. ¶ 44.

Based on these allegations, allegedly acting on behalf of a class of similarly situated lessees, Steinmetz asserts six causes of action for violation of: (1) the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667a and Regulation M, 12 C.F.R. § 213.4; (2) New York U.C.C. § 9–207(2)(c); (3) New York General Obligations Law § 7–101; (4) New York General Business Law § 349; (5) conversion; and (6) unjust enrichment.

The defendant moves to dismiss the complaint on two grounds. Initially, Toyota argues that Steinmetz has failed to allege a claim for which relief can be granted. In the alternative, the defendant maintains that even if the plaintiff's claims were otherwise valid, they are nevertheless barred as the result of a class action settlement and Final Judgment entered in the case of *Mortimer v. River Oaks Toyota, Inc.*, No. 91 L 18043 (Cir. Ct. Cook Cty. Nov. 23, 1993) (final judgment). Steinmetz opposes Toyota's motion, and also cross moves for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15 in the event that the defendant's motion is granted.

## II. *Discussion*

### A. *Rule 12(b)(6) standard*

A complaint is to be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function

... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *La Bounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom.*, *Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *Toyota's motion to dismiss*

The defendant initially argues that the plaintiff's claims hinge on a "single, faulty premise," namely that New York law requires leasing companies that retain security deposits in non-interest bearing accounts pay lessees their share of whatever benefits they receive. Toyota maintains that because New York General Obligations Law is the *exclusive* statutory provision governing the transactions at issue, and does not impose such a requirement, the various other causes of action contained in the Complaint must fail. Alternatively, even if the plaintiff's claims were otherwise valid, the defendant contends that this action is nevertheless barred by the class action settlement in *Mortimer v. River Oaks Toyota, Inc.*, No. 91 L 18043 (Cir. Ct. Cook Cty. Nov. 23, 1993). To facilitate the analysis, the Court will address the latter argument first.

### 1. *The Mortimer class action settlement*

The defendant asserts that the plaintiff's claims are barred by the final judgment entered in *Mortimer v. River Oaks Toyota, Inc.*, No. 91 L 18043 (Cir. Ct. Cook

Cty. Nov. 23, 1993) in connection with a class action settlement. At the outset, the Court notes that it may take judicial notice of court orders without converting this motion to one for summary judgment. *See, e.g., Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1388 n. 9 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988) (recognizing that a court may take judicial notice of pleadings and orders on a motion to dismiss); *General Time Corp. v. Bulk Materials, Inc.,* 826 F.Supp. 471, 473 n. 1 (M.D.Ga.1993); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (1990).

Article IV, Section 1 of the United States Constitution provides that:

> Full faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. Art. IV section 1. Similarly, pursuant to 28 U.S.C. § 1738:

> [J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.

 Section 1738 " 'require[s] all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.' " *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988), quoting, *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). The Supreme Court has recently stated that this rule applies to a state court class action judgment incorporating a settlement agreement releasing the defendants from pending claims. *Matsushita Elec. Indus. Co. v. Epstein,* —— U.S. ——, —— – ——, 116 S.Ct. 873, 877–78, 134 L.Ed.2d 6 (1996).

According to the Notice of Proposed Class Action Settlement in *Mortimer,* the Final Judgment, *see* Affidavit of Robert Shwarts, Dec. 12, 1996, Exh. B., released the defendants from all claims including:

> any and all manner of claims, disputes, actions liabilities, causes of action ... foreseen or unforeseen, known or unknown ... which the Plaintiffs and the Settlement Class Members or any of them ever had, or now have, or may have ... based upon, in connection with, arising out of, or which are in any way directly or indirectly related to (i) the claims made in the lawsuit; (ii) *the contents of [Toyota] lease forms,* including ... any disclosure requirements, and the manner in which disclosures were or were not made by [Toyota....]

Notice of Proposed Class Action Settlement at 7. Shwarts Aff., Exh. C (emphasis supplied).

Class members were defined as "all persons who ... presently have leases on [Toyota] lease forms which were assigned to [Toyota] ...." Final Judgment at 5. On November 23, 1993, the date of the *Mortimer* judgment, the plaintiff met these criteria. *See* Compl., Exh. A. According to the Proposed Notice of Settlement, any class member who wanted to "opt out" was permitted to do so no later than September 30, 1993. Notice of Proposed Settlement at 3. Otherwise, that class member would be bound by the settlement and judgment. *Id.* Because Steinmetz failed to opt out of the class, Toyota maintains that he is bound by the *Mortimer* consent judgment.

Steinmetz attacks this consent judgment on three grounds. Initially, the plaintiff argues that the *Mortimer* lawsuit never contemplated the claims at issue in this case. Rather, Steinmetz contends that *Mortimer* addressed Toyota's "early termination charges and the imposition of a Chicago city tax" and not security deposits. Pl. Mem. of Law at 15.

In addition, the plaintiff argues that the claims raised in *Mortimer* were premature with respect to the causes of action at issue in this lawsuit. As set forth above, Steinmetz contends that *Mortimer* involved early termination charges. Claims based on these charges are not ripe until the lessee terminates early and is assessed a charge. Because Steinmetz did not terminate early, he

asserts that he never had standing to bring the claims asserted in *Mortimer.*

■ Finally, the plaintiff attacks the *Mortimer* class representative as inadequate. In support of this argument Steinmetz asserts that an adequate representative would not "accept illusory consideration for claims over which he or she lacks standing and which claims had already been dismissed, in exchange for a release absolving the defendant from any and all liability of any kind, whether or not related (legally or factually) to the claims that were brought in the action that is being settled." Pl. Mem of Law at 18–19.

The Court is unpersuaded by the plaintiff's first and second arguments. The language of the Final Judgment and Notice of Settlement are clear and were approved by the Illinois Circuit Court. As stated above, Steinmetz was a member of the class and the settlement released Toyota from "all ... claims ... based upon ... the contents of [Toyota] lease forms, including any disclosure requirements." This language on its face appears to preclude the plaintiff's claims. Further, the plaintiff does not allege that he never received notice of his right to opt out of the settlement, an option he did not exercise.

However, the third argument, namely, inadequate representation of class counsel, gives the Court cause for concern. The plaintiffs in the *Mortimer* class action were represented by Daniel Edelman, Esq., an attorney who has been criticized by other courts. For example, in *Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662, 668 (M.D.Fla. 1996), in denying a motion for class certification in part due to inadequate representation, the district court quoted Illinois Circuit Judge Richard L. Curry, who had previously decertified Edelman from serving as class counsel, and stated " 'I can think of no plague worse than to have a Court impose the like of Daniel Edelman and Lawrence Walner on absent and unsuspecting members of a class.' " Judge Curry then criticized Mr. Edelman in great detail. Similarly, in *Daniels v. First Union Nat'l Bank,* Case No. 94–125–Civ–J–20 (M.D.Fla. Dec. 8, 1994) and *Odon USA Meats, Inc. v. Ford Motor Credit Corp.,* No. 93–Civ.–6848, 1994 WL 445559

(N.D.Ill. Aug. 11, 1994) cited therein, the district judge also questioned Mr. Edelman's ability to represent the putative class.

Nevertheless, the Court rejects this argument by the plaintiff. In the *Mortimer* Final Judgment Order, the court found that "Daniel Edelman ... vigorously prosecuted the subject claims on behalf of all classes." Final Judgment at 9. With respect to Edelman's actions in the *Mortimer* case, there is no evidence that he provided inadequate representation.

In addition, as previously stated, Steinmetz does not contend that he did not receive notice of the *Mortimer* class action, or that he objected to the notice of settlement or the class representation in any way. Accordingly, he is bound by that judgment, which releases Toyota from all claims based on disclosures made in the Lease. *See Matsushita, supra; O'Brien v. National Property Analysts Partners,* 739 F.Supp. 896, 902 (S.D.N.Y.1990) (where, as in this case, the notice of settlement is adequate, it is incumbent upon the movant "to study the release, to determine its effects on [his] personal affairs, and to decide whether to opt out from the settlement agreement"). As a result, the defendant's motion to dismiss the Complaint in its entirety based on the class action consent judgment in *Mortimer,* is granted.

In reaching this conclusion the Court takes note of two cases cited by the plaintiff in support of his position and emphasized by his counsel during oral argument: *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434 (7th Cir. 1994), and *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 633 (3d Cir.), *cert. granted,* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996). In *Highsmith,* the Seventh Circuit held that where a plaintiff sues under a car lease alleging that an early termination clause is unlawful, that plaintiff does not have standing to assert his claim where he has not terminated the lease, the rationale being that the early termination clause does not apply to him because he has not been injured. *Id.* at 436–37. Steinmetz attempts to extend *Highsmith* to this case arguing that he could not be bound by the *Mortimer* judgment because he too lacked standing at the time that judgment was entered.

In the Court's view, *Highsmith* is inapposite. As set forth above, the plaintiff was a class member at the time of the *Mortimer* judgment, received notice of those proceedings and chose not to opt out of the class. The notice of proposed settlement included all claims based on disclosures under the lease and advised Steinmetz that his claims in this lawsuit would be effected by that judgment. In the Court's view, these events provided the plaintiff with the "injury" not present in *Highsmith,* and he did have standing in the *Mortimer* lawsuit.

Central to the court's concern in the *Georgine* case was that "plaintiffs may become bound to the settlement even if they are unaware of the class action or lack sufficient information to evaluate it." *Georgine,* 83 F.3d at 633. In that case however, the "injury" involved was an illness as the result of exposure to asbestos, which the court recognized was a sometimes latent condition and may not be readily apparent in the absence of a physical manifestation of the illness.

Again, the ruling in *Georgine* is readily distinguishable. When Steinmetz executed the lease, he knew its terms, including any alleged shortcomings. Further, he had been informed as to the terms of the *Mortimer* consent judgment and did not opt out or object. There is no potential for unknown release of a claim as a result of a hidden and unknown injury. In this case, the plaintiff had all necessary information to assess his claims and act on them in the *Mortimer* context. *Cf. Georgine* 83 F.3d at 633.

### 2. The remaining arguments

Having granted the defendant's motion to dismiss the Complaint on the basis of the binding *Mortimer* class action settlement and final judgment, the Court nevertheless will address the defendant's motion to dismiss on other grounds to complete the record.

#### a. Count III—New York General Obligations Law § 7–101

■ Toyota also attacks the merits of the plaintiff's claims under the New York General Obligations Law § 7–101. Section 7–101 provides:

1. Whenever money shall be deposited or advanced on a contract for the use or rental of personal property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be a trust fund in the possession of the person with whom such deposit or advance shall be made and shall be deposited in a bank or trust company and shall not be mingled with other funds or become an asset of such trustee.

2. Any provision of a contract whereby a person who has deposited or advanced money on a contract for the use or rental of personal property as security for the performance of the contract waives any provision of this section is absolutely void.

＊　　＊　　＊　　＊　　＊　　＊

N.Y. Gen. Oblig. L. § 7–101.

Case law addressing section 7–101 is sparse. According to the Appellate Division, Second Department, title in any moneys transferred in the form of a security deposit remain with the transferor, and attain the status as a trust fund upon deposit. *Dial–N–Drive Rent A Car Network, Inc. v. Marvin,* 62 A.D.2d 165, 404 N.Y.S.2d 365, 367 (2d Dep't 1978). "The manifest purpose of section § 7–101 is to require that such funds be held in trust during the interim between their initial payment and their actual application to liabilities. If the funds could be commingled until occurrence of the condition precedent calling for their application, this statutory purpose would be subverted." *In re United Network, Inc.,* 459 F.2d 556, 562 (2d Cir.), *cert. denied sub nom., Lewron Television, Inc. v. United Network, Inc.,* 409 U.S. 916, 93 S.Ct. 238, 34 L.Ed.2d 178 (1972). The effect of the language contained in the statute "is to change the relationship of the customer with the lessor of personal property, when a security deposit is made, from that of debtor-creditor to a trust relationship." *Dial–N–Drive,* 62 A.D.2d at 168, 404 N.Y.S.2d at 367, citing, *Mallory Assocs. v. Barving Realty Co.,* 300 N.Y. 297, 299–302, 90 N.E.2d 468, 470–72 (1949). These trusts are designed "to protect consumers." *Id.,* at 168, 404 N.Y.S.2d at 368.

Applying these standards, the Court finds Steinmetz has stated a cause of action under the General Obligations Law. As set forth above, section 7–101 provides that any interest accrued on a security deposit "shall continue to be money of the person making the deposit." N.Y. Gen. Oblig. L. § 7–101(1). The Complaint expressly alleges the security deposits at issue are maintained

> in a manner that causes the deposits to increase in value through *interest* or other investment, or permits defendant otherwise to profit or enjoy other economic benefits from its possession of such deposits ('profits')
>
> \* \* \* \* \* \*
>
> .... Toyota neither remits such profits to the lessees nor applies them in reduction of the secured obligation.

Compl. ¶¶ 39–40 (emphasis added).

Further, Steinmetz alleges that

> [d]efendant's practices do not comply [with section 7–101] inasmuch as defendant mingles the security deposit funds with other funds.

Compl. ¶ 61.

In the Court's view, these allegations, are sufficient to pass Rule 12(b)(6) muster. According to these assertions, the defendant preserves the security deposits in accounts which increase in value by accruing interest or otherwise without remitting the increase in value to the lessees.

b. *Count II—New York U.C.C. § 9–207*

■ Toyota next argues that the plaintiff's claim brought pursuant to New York Uniform Commercial Code 9–207 should be dismissed because the U.C.C. does not apply to the security deposits at issue. Section 9–207 provides:

> (1) A secured party must use reasonable care in the custody and preservation of collateral in his possession....
>
> (2) Unless otherwise agreed, when collateral is in the secured party's possession
>
> \* \* \* \* \* \*
>
> (c) the secured party may hold as additional security any increase in profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation.
>
> \* \* \* \* \* \*

N.Y.U.C.C. § 9–207(1), (2)(c).

In *Werbosky v. Ford Motor Credit Co.*, ("*Werbosky I*") 95 Civ. 1876 (KTD) 1996 WL 76133, 1996 U.S. Dist. LEXIS 1816 (S.D.N.Y. Feb. 15, 1996), apparently the only New York case on the issue, the plaintiff brought a similar claim for "earned profits on investments of the security deposit." *Id.* 1996 WL 76133 at \*1, 1996 U.S. Dist. LEXIS 1816 at \*1. In denying the defendants' motion to dismiss, the District Judge held that "Ford Credit correctly concedes that the New York [U.C.C. § 9–207] governs the security deposit involved in this lease."

*Id.* 1996 WL 76133 at \*1, 1996 U.S. Dist. LEXIS 1816 at \*2.

The defendant then filed a motion for reconsideration, apparently arguing that the issue was governed by the New York General Obligations Law § 7–101 rather than the U.C.C. In analyzing the motion, the district court held that Ford Motor Credit's "failure to object [to] the UCC's applicability [in its prior motion papers] was tantamount to a concession." *Werbosky v. Ford Motor Credit Co.*, 95 Civ. 1876 (KTD) (S.D.N.Y. Feb. 29, 1996). In the alternative Judge Duffy recognized that even if the UCC did not apply, Ford Motor Credit would still be liable under the General Obligations Law § 7–101. *Id.* Accordingly, the motion was denied.

In *Demitropoulos v. Bank One Milwaukee, N.A.* ("*Demitropoulos I*"), 924 F.Supp. 894 (N.D.Ill.1996), relying in part on *Werbosky I*, held that Wisconsin Statute section 409.207(2)(c), Wisconsin's analogue to New York U.C.C. § 9–207(c), was similarly applicable to the plaintiff's lease transaction. *Id.* at 896–97. In reaching this conclusion, the court relied on related language contained in Article 9 of the U.C.C. stating that " 'this chapter applies ... [t]o any transaction (*regardless of its form*) which is intended to create a security interest in personal property" and denied the defendant's motion to dismiss.' " *Id.*, quoting, Wis. Stat. § 409.102(1)(a) (emphasis added by the *Dem-*

*itropoulos* court) ("an instrument can both create a leasehold interest in the leased property (and thus be a 'true lease') and create a security interest in collateral, in this case cash collateral"). In a subsequent decision on the defendant's motion for summary judgment, the district judge engaged in a lengthy discussion of the issue and reiterated its original conclusion before granting summary judgment on other grounds. *Demitropoulos v. Bank One Milwaukee, N.A.,* ("*Demitropoulos II* "), 953 F.Supp. 974 (N.D.Ill.1997), citing, *In re Atlanta Times, Inc.,* 259 F.Supp. 820, 827 (N.D.Ga.1966), *aff'd sub nom., Sanders v. National Acceptance Co.,* 383 F.2d 606 (5th Cir.1967); *In re Barr,* 180 B.R. 156, 160 (Bankr.N.D.Tex.1995).

However, recently, in *Wiskup v. Liberty Buick Co.,* 953 F.Supp. 958 (N.D.Ill.1997), the district court, again presented with the issue of a security deposit in conjunction with an automobile lease, but applying Illinois rather than Wisconsin law, reached a different conclusion. Illinois, like Wisconsin, has enacted that provision of the UCC containing the same language presently at issue. *Compare* 810 ILCS 5/9–207(2) *with* N.Y.U.C.C. § 9–207(2); Wis. Stat. § 409.207(2)(c). However, similar to this case, but unlike the court in *Demitropoulos,* the *Wiskup* court was forced to address the interplay between two state statutes, one of which specifically addresses security deposits. *Demitropoulos II,* 953 F.Supp. at 984 n. 16 (noting this distinction between the cases).

In 1921, prior to Illinois enacting its version of UCC § 9–207, the state legislature adopted a statute

> to resolve the confusion surrounding security deposits in the leases of personal property. *See* Ill.Rev.Stat.1985, ch. 29, pars. 9–14....[T]he Illinois legislature chose to treat the security deposit as a kind of quasi-trust, under which the lessor has a positive duty to segregate the lessee's funds from his own, and to earn interest on them for the lessee's benefit.

> The enactment of the UCC in Illinois has no discernible effect on the lessor's duties concerning the lessee's security deposit. The one reported case dealing with this issue analyzed it under the preexisting

statute, and made no mention of the UCC. *Purcell & Wardrope Chartered v. Hertz Corp.,* 175 Ill.App.3d 1069, 125 Ill.Dec. 585, 530 N.E.2d 994 (1988). The failure to mention the UCC was not accidental. The security deposit statute imposed different, and higher, duties on the lessor than the UCC. Unlike the UCC, it required lessors to segregate security deposits from their other funds, and imposed a positive duty on them to invest these funds at a profit. This quasi-trust relationship, with its corresponding rights and duties, was different in kind from the relationship between a secured party and a debtor, and was not implicated at all by the passage of 810 ILCS 5/9–207 [the analogue to N.Y.U.C.C. § 9–207].

*Wiskup,* 953 F.Supp. at 972–73 (footnote omitted). In 1987, the Illinois legislature replaced the old security deposit statute with the Consumer Deposit Security Act, 815 ILCS 165/1–5 which eliminated the lessors' obligation to segregate security deposits and invest them for a profit. Rather, they were given the option to post a bond with the Illinois Attorney General or place the deposits with a bank, trust company or savings and loan institution. Although the account does not have to bear interest, any such accrued interest must be remitted to the lessees. *Wiskup,* 953 F.Supp. at 973, citing, 815 ILCS 165/3.

Based on these observations, the *Wiskup* court concluded:

> Both UCC 9–207 and the Consumer Deposit Security Act are concerned with exactly the same issue: making sure that the party who gives property as security will receive it back after fulfilling his obligations. The Consumer Deposit Security Act lays down specific rules for accomplishing this purpose in personal property leases involving security deposits. Moreover, the Act appears to be no less rigorous than the UCC in its requirements. We do not believe that the Illinois courts would confuse the issue by applying both the UCC and the Consumer Deposit Security Act to security deposits in automobile leases. Nor will we. We dismiss the plaintiff's claim that the defendants' policy

of retaining interest from security deposits violates 810 ILCS 5/9–207.

*Wiskup,* 953 F.Supp. at 973.

In the Court's view, *Wiskup* represents the better interpretation of section 9–207. In New York, as in Illinois, the state legislature has enacted both U.C.C. § 9–207 and a more specific statute which expressly addresses the requirements imposed upon security deposits, namely General Obligations Law section 7–101, which statute is not entirely consistent with the U.C.C. For example, the New York General Obligations Law, similar to the Illinois Consumer Deposit Security Act, prohibits the commingling of security deposits with other funds.

Further, permitting these causes of action to coexist would effectively render the preamble to U.C.C. § 9–207(2) a nullity with respect to security deposits maintained in interest bearing accounts. Section 9–207(2) provides at the outset that the parties may agree not to remit to the debtor—in this case the lessee—any profits accrued on the security deposit at issue. The General Obligations Law however, prohibits such an agreement as to security deposits which the lessor maintains in an interest bearing account. The net effect of permitting the plaintiff to maintain a cause of action under both of these statutes would be to permit the lessor to protect itself from liability based on all profits accruing on a lessee's security deposit, except where the lessor maintains the security deposit in an interest bearing account. The Court doubts that the New York legislature intended such an arbitrary result. Accordingly, the Court finds that the plaintiff's claims are governed by New York General Obligations Law to the exclusion of the U.C.C. *See* N.Y.U.C.C. § 9–203(4), Off. Comm. 6. ("provisions of regulatory statutes covering the field of consumer finance prevail over the provisions of this Article in case of conflict").

To the extent that this decision appears to be contrary to the district court's decisions in *Demitropoulos I* and *Demitropoulos II,* that case turns on an interpretation of Wisconsin law, and the district judge expressly recognized that there seemed to be no issue as to conflicting state statutes. *Demitropoulos II,* 953 F.Supp. at 984 n. 16. Also, this Court

respectfully disagrees with the holding in *Werbosky.* As a result, even if the Complaint were not dismissed as a result of the *Mortimer* judgment, Toyota's motion to dismiss Count II of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) would have been granted.

■ In addition, even if U.C.C. § 9–207 were applicable in this case, Count II of the Complaint would nevertheless have been dismissed. As set forth above, the Lease provides:

> You may use the security deposit to pay all amounts that you should pay under this Lease, but do not. If you perform all of your obligations under this Lease, the security deposit will be returned to you at the end of the Lease Term. *No interest will accrue or be paid to you on the security deposit unless otherwise required by law.*

Compl. ¶ 36, Lease ¶ 32 (emphasis added).

Steinmetz argues that although section 9–207 expressly permits parties to waive any right to profits accrued on the lessor's investment of security deposits, the Lease at issue in this case only purports to waive accrued "interest," not all forms of profit. As a result, the plaintiff contends that under the U.C.C. he would be entitled to any such non-interest benefits. The Court disagrees.

Steinmetz's interpretation of both the Lease and U.C.C. section 9–207 is counterintuitiva. According to the plaintiff, a person who negotiates a car lease would have to agree to pay a security deposit. Then in considering whether he was entitled to any return on the deposit, presumably held over the life of the lease, he would agree to expect no interest payment, but would subsequently assume that he was entitled to some other type of accrued benefit based on the defendant's "Earned Income Credit" which effectively "reduc[es] bank charges on due accounts." Compl. ¶ 39. As aptly stated in *Demitropoulos II,*

> [t]his Court will not, without legislative direction, place on lessors such an onerous burden to discern and calculate every possible benefit, no matter how small or tangential, gained from holding onto a securi-

ty deposit. The UCC was enacted 'to simplify, clarify and modernize the law governing commercial transactions,' not complicate and muddle it.

*Demitropoulos II,* 953 F.Supp. at 985, quoting, Wis. Stat. § 401.102(2)(a) (analogous to N.Y.U.C.C. § 1–102(2)(a)) (granting defendant lessor's motion for summary judgment).

c. *Count I—The Consumer Leasing Act*

■ Toyota also moves to dismiss the plaintiff's Consumer Leasing Act ("CLA") claim. Steinmetz alleges that the defendant, by virtue of its retaining "the profits it earns from the security deposit[s]" it holds, violated both the CLA and Regulation M. The relevant section of the Consumer Leasing Act provides as follows:

*Consumer lease disclosures*

Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable:

\* \* \* \* \* \*

(4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;

\* \* \* \* \* \*

(8) A description of any security interest held or to be retained by the lessor in connection with the lease and a clear identification of the property to which the security interest relates. . . .

15 U.S.C. § 1667a.

Similarly, Regulation M requires disclosure of "[t]he total amount of any payment, such as a security deposit," 12 C.F.R. § 213.4(g)(2), including "[t]he total amount of all other charges, individually itemized, payable by the lessee to the lessor, which are not included in the periodic payments," 12 C.F.R. § 213.4(g)(5), and "[a] description of any se-

curity interest, other than a security deposit disclosed under paragraph (g)(2) of this section, held or to be retained by the lessor in connection with the lease and a clear identification of the property to which the security interest relates." 12 C.F.R. § 213.4(g)(9). Additional information may be supplied at the option of the lessor, but not so as to "mislead or confuse the lessee or contradict, obscure, or detract attention from the information required to be disclosed." 12 C.F.R. § 213.4(b).

According to Steinmetz, "pursuant to the UCC, profits or increases realized on the lessee's refundable security deposit are held as 'additional security'" under 12 C.F.R. § 213.4(g)(9). Pl. Mem. of Law at 11. It is this "non-disclosure of the additional security interest in the profits on the security deposits that violates that CLA. . . . Lacking such a disclosure, Toyota's leases violate the CLA" and 12 C.F.R. § 213.4(g)(4), (5) & (8). *Id.* at 11 & n. 14.

The only court in this circuit to address the issue buttresses the plaintiff's position. *See Werbosky,* 1996 U.S. Dist. LEXIS 1816 at \*3, 1996 WL 76133 at \*1 (the defendant "Ford Credit has a duty pursuant to 15 U.S.C. § 1667a, to disclose the fact that it retains profits"). However, as stated above, this Court disagrees with *Werbosky* as to the premise underlying the plaintiff's CLA claim, namely that the UCC applies in this case. Accordingly, because Toyota is not required to remit any profits under N.Y.U.C.C. § 9–207, disclosure of these profits is not required under the CLA or Regulation M. Furthermore, although *Demitropoulos I* requires the disclosure of any retained profits, *Demitropoulos I,* 924 F.Supp. at 898, *Demitropoulos II* recognizes that CLA disclosure claims based on an alleged failure to disclose accrued "profits," as opposed to "interest" must be dismissed as a matter of law. *Demitropoulos II,* 953 F.Supp. at 987.

■ Applying these standards, if the Complaint was not subject to the *Mortimer* judgment, the Court would nevertheless dismiss this count based on the defendant's alleged failure to disclose any profits derived from Toyota's maintenance of lease security

deposits. In reaching this conclusion, the Court is careful to distinguish between the disclosure of any accrued interest on the deposits on the one hand, which paragraph 32 of the Lease provides for, and other profits derived from economies of scale, such as an "Earned Income Credit" which effectively "reduc[es] bank charges due on its accounts." Compl. ¶ 39. While a cause of action may be maintained based on a lessor's failure to disclose interest which accrues on a security deposit which the lessor maintains in the appropriate type of account, no claim will lie where the plaintiff relies solely on the economies of scale of the defendant's business, such as a reduction in bank charges a lessor may pay because of the large volume of security deposits it maintains. *Demitropoulos II*, 953 F.Supp. at 987. Accordingly, independent of the *Mortimer* preclusion, Toyota's motion to dismiss Count I for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), would have been granted. *See Gaydos v. Huntington Nat'l Bank*, 941 F.Supp. 669 (N.D.Ohio 1996) (granting the defendant-lessor's motion to dismiss claims brought pursuant to 15 U.S.C. § 1667a(4), (5) & (8)).

In reaching this conclusion, the Court recognizes that discovery on the plaintiff's claim brought pursuant to the General Obligations Law might have uncovered the undisclosed retention of interest or analogous return. Should such information have been disclosed prior to the close of discovery, Steinmetz may have been granted leave to file an amended complaint at that time.

#### d. *Count IV—New York Consumer Protection Act*

■■■■ The defendant also moves to dismiss the plaintiff's claim for deceptive trade practices under the New York Consumer Protection Act. New York General Business Law section 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349(a). "[A]ny person who has been injured ... may bring an action in his own name to enjoin such unlawful act or practice, [or] an action to recover his actual damages." N.Y. Gen. Bus. L. § 349(h). The elements of a claim

under section 349 are: (1) that the practice alleged was misleading in a material respect; and (2) that the plaintiff was injured. *See Jones v. Wide World of Cars, Inc.*, 820 F.Supp. 132, 138 (S.D.N.Y.1993).

Although the Court would not be inclined to sustain the plaintiff's deceptive trade practices claim based on Toyota's alleged failure to disclose any accrued "profits" such as an "Earned Income Credit," dismissal at this early juncture would be premature. As stated above, in addition to alleging a failure to remit any profits obtained as a result of the security deposits, Steinmetz also alleges that the defendant has failed to repay any "increase in value through interest." Compl. ¶ 39. In the Courts view, if discovery should yield evidence that Toyota has kept interest which has accrued on the security deposits, despite its representations to the contrary in the Lease, such conduct would establish a claim for deceptive trade practices. Accordingly, in the absence of the *Mortimer* judgment, the defendant's motion to dismiss Count IV of the Complaint would have been denied.

In reaching this conclusion, the Court notes that *DBL Realty Corp. v. Zavala*, 166 Misc.2d 736, 637 N.Y.S.2d 612 (1st Dep't 1995), cited by Toyota, does not require a different result. In *DBL*, the First Department rejected a tenant's claim for overcharge of rent under the guise of a claim for deceptive trade practices where another state statute, namely the Rent Regulation Act of 1993, mandated the opposite result. In this case, there is no contrary state statute which would compel the Court to reach a different conclusion.

#### e. *Count V—Conversion*

■■■■ Steinmetz also alleges that the failure to remit profits constitutes a conversion. "Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).

The defendant assumes that the plaintiff's claim is based on the allegation that "[p]lain-

tiff wrote no separate 'security deposit' check, and his funds for these purposes were mixed in accounts contain funds belonging to Toyota." Compl. ¶ 38. Toyota opposes this claim on the ground that under the General Obligations Law, "[w]here security deposit funds have been temporarily commingled but are eventually segregated, no claim for conversion will stand." Def. Mem. of Law at 15, citing, *160 Realty Corp. v. 162 Realty, Corp.,* 113 N.Y.S.2d 618, 621, *aff'd,* 280 A.D. 762, 113 N.Y.S.2d 678 (1st Dep't 1952).

The Court makes no ruling as to the merits of this argument because there is an alternative view of the Complaint which would render this cause of action viable. Similar to the plaintiff's deceptive trade practices claim, it is possible to read the Complaint as alleging a cause of action for conversion based on "interest" unlawfully and permanently retained. Given the plaintiff's right to such interest, this count is sufficiently pleaded to survive Rule 12(b)(6) muster and, if the claim was not barred by the *Mortimer* judgment, Toyota's motion to dismiss this cause of action would be denied.

### f. *Count VI—Unjust Enrichment*

Steinmetz's final cause of action is for unjust enrichment based on Toyota's "refusing to remit to lessees the profits realized from lessees security deposits...." Compl. ¶ 73. "To plead a claim for unjust enrichment, a plaintiff must show 'that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to plaintiff.'" *Reed Int'l Trading Corp. v. Donau Bank AG,* 866 F.Supp. 750, 757 (S.D.N.Y.1994), quoting, *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 19 (2d Cir.1983); *See Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996).

The defendant's motion to dismiss with respect to the plaintiff's unjust enrichment claim is denied under the same reasoning applied to the conversion claim. While the Court would be hesitant to apply this doctrine to a claim for "profits" as described above, the Steinmetz claims are also based on "interest" allegedly earned on the security deposits. If Toyota received the earned interest on the security deposits, such allegations may support a claim for unjust enrichment. Accordingly, if Toyota's motion to dismiss Count VI had not been granted on the basis of the *Mortimer* judgment, it would have been denied.

### C. *The Plaintiff's cross motion for leave to file an amended complaint*

Steinmetz cross moves for leave to file an amended complaint. Fed.R.Civ.P. 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350 ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith").

Applying this standard, the plaintiff's motion for leave to file an amended complaint is denied on futility grounds. As stated above, this lawsuit is barred on the basis of the *Mortimer* settlement and final judgment. In the Court's view, the plaintiff will not be able to file an amended pleading that would overcome this obstacle. Furthermore, even in the absence of the precluding *Mortimer* ruling, amendment of the Complaint would not resurrect those causes of action which would have been otherwise dismissed, namely the plaintiff's claims brought pursuant to the New York U.C.C. and the CLA. Accordingly, Steinmetz's cross motion for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15 is denied.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's motion to dismiss the Complaint in its entirety, pursuant to Fed.R.Civ.P. 12(b)(6) is granted; it is further

ORDERED, that the plaintiff's cross motion to leave to file an amended complaint is denied; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.