Edward AIDE and Lorraine Aide, on behalf of themselves and all others similarly situated, Appellant–Defendants,

v.

CHRYSLER FINANCIAL CORPORATION, formerly known as (f/k/a) Chrysler Credit Corporation, Appellee–Plaintiff.

No. 49A02–9801–CV–49.

Court of Appeals of Indiana.

Sept. 30, 1998.

Irwin B. Levin, David J. Cutshaw, Patrick L. Shavloske, Indianapolis, for Appellants–Defendants.

Robert R. Clark, Indianapolis, Michael B. Murphy, San Francisco, CA, for Appellee–Plaintiff.

## OPINION

ROBERTSON, Senior Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Edward Aide and Lorraine Aide, on behalf of themselves and all others similarly situated (collectively, "Aide"), appeal the trial court's grant of summary judgment in favor of Defendant–Appellee Chrysler Financial Corporation, f/k/a Chrysler Credit Corporation ("CFC").

We affirm.

### ISSUES

Aide raises five issues for our review, which we consolidate and restate as:

1.  Whether an Illinois class action judgment should be given full faith and credit.

2.  Whether Aide's claims were exempted from the release in the Illinois class action.

3.  Whether Aide's claims were outside the scope of the release in the Illinois class action.

### FACTS AND PROCEDURAL HISTORY

On August 20, 1990, Aide leased a van from an Indiana Chrysler–Plymouth dealer under a standard lease agreement. Under the terms of the lease, Aide was required to, and did, pay a $400.00 deposit. The lease was assigned to CFC.

Upon the termination of lease on August 31, 1994, CFC refunded the $400.00 deposit

to Aide. Aide did not demand, and CFC did not pay, any interest on the deposit.

Meanwhile, in 1991, three CFC lessees, Kelvin and Marcita Highsmith and Joseph Villasenor, filed a class action suit against CFC in an Illinois federal district court. An amended complaint was filed in 1992, claiming that CFC's lease form violated the federal Truth–In–Lending Act and various related state laws in the calculation and disclosure of early termination charges, excess mileage charges, manufacturer warranties, and certain other matters.

The district court initially granted CFC's motion to dismiss the *Highsmith* action. However, on appeal the Seventh Circuit reversed the district court in part and remanded the case for further proceedings. *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir.1994).

Following remand, the parties in *Highsmith* entered into a settlement agreement. The agreement provided for certification of a plaintiff class consisting of all consumer vehicle lessees whose leases were assigned to CFC and were outstanding at any time between October 31, 1990, and July 1, 1994. The agreement also provided that in exchange for a settlement payment and other relief, the class members would release all claims against CFC arising out of their vehicle leases, excepting only personal injury, property damage, and warranty claims.

The district court granted the Highsmith's motion for preliminary approval of the settlement, conditionally certifying the proposed settlement class and directing that notice be given to all class members. Aide was part of the class because the van lease was assigned to CFC and was outstanding during the entire period from October 1991 to July 1994.

Class notice was mailed to all members of the settlement class and was published in a national newspaper. The class notice fully disclosed the claims asserted in the suit and the terms of the proposed settlement. Aide remembers receiving the notice.

Aide neither objected to the settlement nor requested exclusion from the class. One

class member, Stacy R. Sanders, did object to the proposed settlement. She had filed a separate putative class action against CFC in a New York federal district court, repeating many of the claims alleged in *Highsmith* as well as claims regarding payment of interest on security deposits pursuant to New York's version of Uniform Commercial Code § 9–207. In response to Sander's objection, the *Highsmith* court exempted from the judgment's release clause several claims that Sanders was allowed to pursue in New York.

The district court granted final approval of the *Highsmith* settlement and entered a final judgment which, among other things, finally certified the settlement class and found both that class notice had been given in accordance with the requirements of Federal Rule of Civil Procedure 23(c) and that the settlement was fair, reasonable, and adequate. The judgment also provided that all class members were deemed to have "released and forever discharged [CFC]" from liability for claims arising from the lease agreements, except for the aforementioned personal injury, property damage, warranty claims, and claims asserted in the *Sanders* action.

Pursuant to the settlement, CFC sent Aide a check representing a proportionate share of the settlement proceeds. Aide received, endorsed, and cashed the check.

On December 11, 1996, Aide filed a complaint on behalf of himself and others similarly situated for damages, accounting, declaratory judgment, and injunctive relief. The complaint alleged, *inter alia*, that CFC violated Uniform Commercial Code § 9–207 (hereinafter, "§ 9–207") by failing to remit or credit interest on the security deposits made by members of the class pursuant to lease agreements. CFC filed a motion for summary judgment alleging that Aide had released his claim as a member of the *Highsmith* class. The trial court granted the motion, giving preclusive effect to the Illinois class action judgment under the doctrine of *res judicata*.[1] Aide now appeals.

---

1. The trial court implicitly recognized that the Illinois class action judgment was entitled to full faith and credit in Indiana.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

Summary judgment is appropriate when the evidentiary matter designated to the trial court shows both that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Western Reserve Mutual Casualty Co. v. Holland,* 666 N.E.2d 966, 968 (Ind.Ct.App. 1996). Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Id.* Because there are no facts in dispute in the present case, we decide this matter as a question of law. A question of law is particularly suited for summary judgment. *Id.* When reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court. *Porter v. Irvin's Interstate Brick & Block Co., Inc.,* 691 N.E.2d 1363, 1364 (Ind. Ct.App.1998). Where there are no disputed facts and the question presented is a pure question of law, we review the matter *de novo. City of Wabash v. Wabash County Sheriff's Department,* 562 N.E.2d 1299, 1300 (Ind.Ct.App.1990).

### I. FULL FAITH AND CREDIT

As our supreme court recently held in *Northern Indiana Commuter Transportation District v. Chicago SouthShore and South Bend Railroad,* 685 N.E.2d 680, 685 (Ind.1997), the issue of whether to give full faith and credit to another state's judgment "turns on settled constitutional principles governing the preclusive effect to be accorded [the] judgment...." The Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." *Id.* (*quoting* U.S. CONST. art. IV, § 1). This constitutional provision is "implemented by an Indiana statute making explicit that 'records and judicial proceedings' from courts in other states 'shall have full faith and credit given to them in any court within this state, as by law or usage they have in the courts whence taken.'" *Id.* (*citing* Ind.Code 34–1–18–7 (1993)).

■ Full faith and credit means that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Id.* (*quoting Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Association,* 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982)). Simply stated, to give full faith and credit to the district court's *Highsmith* judgment is to give it *res judicata* effect and to deny any of Aide's claims which duplicate claims released in the *Highsmith* settlement.

■ In the present case, Aide challenges the preclusive effect of the *Highsmith* settlement, arguing that he did not receive the due process right to adequate representation in the Illinois class action. In *Northern Indiana,* our supreme court addressed the relationship between the preclusive effect of full faith and credit and the protection of due process rights. The court somewhat tentatively noted its approval of Justice Ginsburg's concurring and dissenting opinion in *Matsushita Electric Industrial Co., Ltd. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996), at least to the extent that the opinion states that a state court judgment is not entitled to full faith and credit unless it satisfies the requirements of procedural due process. 685 N.E.2d at 692. Accordingly, we examine the *Highsmith* settlement to insure that Aide was provided with due process protection in the Illinois class action.

■ In *Matsushita,* the court listed the minimal procedural due process requirements a class action judgment must meet if it is to bind absentee class members. The requirements are notice, an opportunity to be heard, a right to opt out, and adequate representation. 516 U.S. at 394–396, 116 S.Ct. at 888 (*citing Phillips Petroleum v. Shutts,* 472 U.S. 797, 810–812, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985)). The Seventh Circuit has held that the due process right to adequate representation requires that (1) the representative class members must not have interests antagonistic to those of the absentee members of the class, and (2) the class attorney must be qualified, experienced, and generally able to conduct the proposed litigation.

*Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977).

■ Aide contends that the interests of the representative class members in the *Highsmith* action were antagonistic to the interest of those absentee members who made a deposit pursuant to a lease with Chrysler–Plymouth and who pursued a § 9–207 claim for payment of interest upon the termination of the lease. Aide's contention is based on his belief that the representative class members were prevented by Illinois law from pursuing a § 9–207 claim. It is undisputed that the representative class members in the *Highsmith* case, like Aide, did not receive interest on the refund of their deposits made pursuant to their lease agreements with Chrysler–Plymouth. It is also undisputed that when the *Highsmith* settlement occurred, the representative class members were entitled to believe that they possessed a right to take issue with CFC under the Illinois version of § 9–207. It was not until nearly two years later that a federal district court held that an Illinois § 9–207 claim for interest on a security deposit was controlled by a separate Illinois statute. *See Wiskup v. Liberty Buick Co., Inc.*, 953 F.Supp. 958 (N.D.Ill.1997). As a matter of law, Aide has failed to establish that the representative class members in the *Highsmith* case possessed interests antagonistic to Aide's interests.

■ Aide also contends that class counsel did not adequately represent absent class members in the *Highsmith* case. Aide points to his submission of evidence of derogatory comments by federal judges about counsel's performance in other class actions as evidence of less than adequate representation in the *Highsmith* case. Aide also points to his submission of an affidavit by an attorney who opined that counsel was inadequate in (1) providing a release which included claims not raised by the representative class members, and (2) not including an exclusion of claims under § 9–207 in the amendment to the release after Sanders objected to the inclusion of these claims in the release.

■ The only question pertinent to this case is whether class counsel provided adequate representation in the *Highsmith* case. As the federal district court found in *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1300 (E.D.N.Y.1997), the performance of counsel in other cases is not determinative on the question of adequate representation in the case being reviewed. Thus, class counsel's performance in other cases does not establish a lack of adequate representation in the *Highsmith* case.

■ The release of claims not raised by the representative class members is not necessarily indicative of inadequate representation. The global release of all claims arising out of a transaction which formed the basis for a class action is an accepted feature of a class action settlement. *See e.g., Matsushita*, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (holding that *res judicata* effect must be given to the release of federal claims in a state court class action).

Furthermore, the amendment to the release does respond to Sanders's objection concerning § 9–207. The amendment, which was made part of the final settlement and the court's judgment, provides that the § 9–207 claim asserted either individually or on behalf of a putative class member raised in the *Sanders* case shall be excluded from the release. The amendment also provides that the exclusion "shall apply (1) to *Sanders* regardless of whether [Sanders] or some other member of the putative class named plaintiff and class representative, and (2) to any state court action where the aforementioned claims in *Sanders* are refiled if *Sanders* is dismissed from federal court." (R. 457). As a matter of law, Aide has failed to establish that class counsel provided inadequate representation.[2]

## II. EXEMPTION UNDER THE RELEASE

Aide contends that the *Highsmith* release is ambiguous and that his § 9–207 claims are

2. Aide makes much of the requirements set forth in *Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), and *Hefty v. Penn Central Corp.*, 680 N.E.2d 843 (Ind.1997), pertaining to the specificity of the

district or trial court's findings. Our *de novo* review of the issue of adequate representation renders the issue of the efficacy of the district court's findings moot.

exempted therefrom. Aide argues that in exempting the §9–207 claims raised in the *Sanders* action, the release also exempted §9–207 claims raised by other potential plaintiffs.

 The *Highsmith* release specifically sets out the claims which are exempted from the release's effect. The release provides that claims arising from personal injury, property damage, and breaches of warranty are exempted. In response to Sanders's objection to the language of the initial release, the release also provides that the §9–207 claim made in the *Sanders* case is exempt to the extent that it is part of that particular case. The release further specifically provides that a §9–207 claim may be raised in a state court only in the event that the *Sanders* case is dismissed. Aide has not shown that the *Sanders* case has been dismissed and resolution of Aide's §9–207 claim lies within the framework of the *Sanders* federal case. The release clearly prohibits Aide from litigating the claim in a state court absent dismissal of *Sanders*.

### III. SCOPE OF THE RELEASE

Aide contends that because its claim is based on §9–207 and not the lease agreement, the claim is outside the scope of the *Highsmith* release. Aide's contention is without merit.

The *Highsmith* release pertains to "any other claims of any kind arising out of the Class members' leases." (R. 457). The phrase "arising out of" has been interpreted to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with." *See Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989).

Aide's complaint alleges that Aide and other possible class members signed leases and posted security deposits under the leases. Aide even attached a copy of the standard lease to his complaint. The lease is repeatedly mentioned in the complaint's recitation of the §9–207 count. As Aide's complaint unambiguously demonstrates, his §9–207 claim "grows out of," "flows from," "is incidental to," and "has a connection with" the lease under which the deposit was paid. Therefore, the claim "arises out of" the standard lease that was referred to in the *Hi-*

*ghsmith* release. Aide's claim is clearly within the scope of the release.

### SUMMARY

We have made a *de novo* review of the trial court's grant of summary judgment. We find as a matter of law that summary judgment was appropriate.

Affirmed.

RILEY and KIRSCH, JJ., concur.